## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| ROBERT BERG, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WHOLE FOODS MARKET, INC., MARY ELLEN COE, SHAHID HASSAN, KEN HICKS, STEPHANIE KUGELMAN, JOHN MACKEY, JOE MANSUETO, SHARON MCCOLLAM, SCOTT POWERS, WALTER ROBB, RON SHAICH, JONATHAN A. SEIFFER, GABRIELLE SULZBERGER, AMAZON.COM, INC., and WALNUT MERGER SUB, INC.,<br><br>Defendants. | §§§§§§§§§§§§§§§§§§§§ Case No. 1:17-cv-00677 |

## **COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## **NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on June 16, 2017 (the "Proposed Transaction"), pursuant to Whole Foods Market, Inc. ("Whole Foods" or the "Company") will be acquired Amazon.com, Inc. ("Parent") and Walnut Merger Sub, Inc. ("Merger Sub," and together with Parent, "Amazon").

2. On June 15, 2017, Whole Foods' Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Amazon. Pursuant to the terms of the Merger Agreement, shareholders of

Whole Foods will receive $42.00 per share in cash.

3. On July 7, 2017, defendants filed a Preliminary Proxy Statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Whole Foods common stock.

9. Defendant Whole Foods is a Texas corporation and maintains its principal executive offices at 550 Bowie Street, Austin, Texas 78703. Whole Foods' common stock is traded on the NasdaqGS under the ticker symbol "WFM."

10. Defendant Mary Ellen Coe ("Coe") has served as a director of Whole Foods since 2016.

11. Defendant Shahid Hassan ("Hassan") has served as a director of Whole Foods since 2005.

12. Defendant Ken Hicks ("Hicks") has served as a director of Whole Foods since 2005.

13. Defendant Stephanie Kugelman ("Kugelman") has served as a director of Whole Foods since 2008.

14. Defendant John Mackey ("Mackey") is the co-founder and co-Chief Executive Officer ("CEO") of Whole Foods and has served as a director since 1978.

15. Defendant Joe Mansueto ("Mansueto") has served as a director of Whole Foods since 2017.

16. Defendant Sharon McCollam ("McCollam") has served as a director of Whole Foods since 2017.

17. Defendant Scott Powers ("Powers") has served as a director of Whole Foods since 2017.

18. Defendant Walter Robb ("Robb") has served as a director of Whole Foods since 2010. Robb is Co-CEO of the Company.

19. Defendant Ron Shaich ("Shaich") has served as a director of Whole Foods since 2017.

20. Defendant Jonathan A. Seiffer ("Seiffer") has served as a director of Whole Foods since 2008. According to the Company's website, he is Chair of the Audit Committee.

21. Defendant Gabrielle Sulzberger ("Sulzberger") has served as a director of Whole Foods since 2003 and is Chair of the Board.

22. The defendants identified in paragraphs 10 through 21 are collectively referred to herein as the "Individual Defendants."

23. Defendant Parent is Delaware corporation and a party to the Merger Agreement.

24. Defendant Merger Sub is a Texas corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

25. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of West (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

26. This action is properly maintainable as a class action.

27. The Class is so numerous that joinder of all members is impracticable. As of June 12, 2017, there were approximately 319,685,753 shares of Whole Foods common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

28. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

29. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

30. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

31. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company and the Proposed Transaction*

32. According to its website, Whole Foods is the leading natural and organic foods supermarket, the first national "Certified Organic" grocer, and uniquely positioned as America's Healthiest Grocery Store™.

33. The Company has more than 460 stores in the United States, Canada, and the United Kingdom.

34. Whole Foods employs approximately 87,000 team members and has been ranked for twenty consecutive years as one of the "100 Best Companies to Work For" in America by

Fortune magazine.

35. On November 2, 2016, Whole Foods issued a press release wherein it reported its financial results for the fourth quarter and year ended September 25, 2016. The Company reported that, in the fourth quarter, total sales increased to a record $3.5 billion. With respect to the financial results, Individual Defendant Mackey commented:

> In a year that presented many headwinds for food retailers, we made measurable progress on positioning our company for continued success while producing industry-leading sales per gross square foot and healthy returns on invested capital[.] Through our strong balance sheet and robust cash flow, we self-funded our new store development and technology investments and, in keeping with our capital allocation strategy, returned more than $1.1 billion to our shareholders through dividends and share repurchases.

Individual Defendant Robb added:

> Food retailing is evolving at an incredibly fast pace, and consumers have many more options for how and where they buy their food than ever before. At the same time, the market opportunity is expanding as the consciousness about fresh, healthy foods continues to awaken[.] Our company mission and commitment to transparency are more relevant and timely than ever, and we will keep innovating and creating environments where people can connect and find a sense of community - in our stores and in the digital world.

36. On February 8, 2017, Whole Foods issued a press release wherein it reported its financial results for the first quarter ended January 15, 2017. The Company reported that total sales increased 1.9% to a record $4.9 billion.

37. Nevertheless, the Individual Defendants caused the Company to enter into the Merger Agreement, pursuant to which the Company will be acquired for inadequate consideration.

38. The Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and

severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.

39. Further, the Company must promptly advise Amazon of any proposals or inquiries received from other parties.

40. Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants Amazon a "matching right" with respect to any "Superior Proposal" made to the Company.

41. Further locking up control of the Company in favor of Amazon, the Merger Agreement provides for a "termination fee" of $400 million payable by the Company to Amazon if the Individual Defendants cause the Company to terminate the Merger Agreement.

42. By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

43. The merger consideration to be paid to plaintiff and the Class in the Proposed Transaction is inadequate.

44. Among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

45. Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

46. Defendants filed the Proxy Statement with the SEC in connection with the

Proposed Transaction.

47.     The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

48.     First, the Proxy Statement omits material information regarding Whole Foods' financial projections and the financial analyses performed by the Company's financial advisor, Evercore Group L.L.C. ("Evercore").

49.     With respect to Whole Foods' financial projections, the Proxy Statement fails to disclose:  (i) earnings; (ii) interest expense; (iii) investment and other income; (iv) income taxes; (v) depreciation and amortization; (vi) net cash provided by operating activities; (vii) capital expenditures; (viii) changes in net working capital; (ix) earnings per share; and (x) a reconciliation of all non-GAAP to GAAP metrics.

50.     With respect to Evercore's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose:  (i) fiscal year 2022 EBITDA and unlevered free cash flow; (ii) the constituent line items used in calculating 2022 EBITDA and unlevered free cash flow; (iii) the estimated range of terminal values of Whole Foods; and (iv) the inputs and assumptions underlying the discount rate range of 7.0% to 9.0%.

51.     With respect to Evercore's *Selected Public Company Trading Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for the companies observed by Evercore in the analysis.

52.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.  Moreover, when a banker's endorsement of the

8

fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

53.    The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; (ii) "Reasons for the Merger; Recommendation of the Whole Foods Market Board of Directors"; (iii) "Certain Whole Foods Market Unaudited Prospective Financial Information"; and (iv) "Opinion of Whole Foods Market's Financial Advisor."

54.    Second, the Proxy Statement omits material information regarding potential conflicts of interest of the Company's officers and directors.

55.    Specifically, the Proxy Statement fails to disclose the timing and nature of all communications regarding future employment and/or directorship of Whole Foods' officers and directors, including who participated in all such communications, including when Amazon first expressed its interest in retaining members of Company management following the merger.

56.    Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

57.    The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: ) "Background of the Merger"; (ii) "Reasons for the Merger; Recommendation of the Whole Foods Market Board of Directors"; and (iii) "Interests of the Company's Directors and Executive Officers in

9

the Merger."

58. Third, the Proxy Statement omits material information regarding potential conflicts of interest of Evercore.

59. For example, the Proxy Statement fails to disclose the amount of the retainer fees and the "certain fees in connection with potential acquisition proposals [Evercore] may receive and other strategic shareholder advisory matters" to be paid to Evercore by the Company.

60. Additionally, the Proxy Statement provides that, "[a]side from its current engagement by Whole Foods Market, Evercore has not in the past two years provided financial advisory or investment banking services to Whole Foods Market for which Evercore has received compensation." However, Evercore's opinion letter, attached to the Proxy Statement as Annex B, states that, "[p]rior to this engagement, we, Evercore Group L.L.C., and its affiliates provided financial advisory services to the Company and had received fees for the rendering of these services including the reimbursement of expenses." Defendants must provide an explanation for these misleading and inconsistent statements, and also disclose the nature of the past services provided by Evercore to the Company and the amount of fees received by Evercore for such services.

61. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

62. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; (ii) "Reasons for the Merger; Recommendation of the Whole Foods Market Board of Directors"; and (iii) "Opinion of Whole Foods Market's Financial Advisor."

63. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Whole Foods' stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Whole Foods

64. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

65. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Whole Foods is liable as the issuer of these statements.

66. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

67. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

68. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

69. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

70. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

71. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Amazon

72. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

73. The Individual Defendants and Amazon acted as controlling persons of Whole Foods within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Whole Foods and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

74. Each of the Individual Defendants and Amazon was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

75. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were

thus directly involved in the making of the Proxy Statement.

76. Amazon also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

77. By virtue of the foregoing, the Individual Defendants and Amazon violated Section 20(a) of the 1934 Act.

78. As set forth above, the Individual Defendants and Amazon had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: July 14, 2017

**KENDALL LAW GROUP, PLLC**

By: /s/ Joe Kendall

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
2 Righter Parkway, Suite 120
Wilmington, DE 19803
Telephone: (302) 295-5310
Facsimile: (302) 654-7530

**RM LAW, P.C.**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305

Joe Kendall
Texas Bar No. 11260700
jkendall@kendalllawgroup.com
Jamie J. McKey
Texas Bar No. 24045262
jmckey@kendalllawgroup.com
3232 McKinney Avenue, Suite 700
Dallas, TX 75204
Telephone: (214) 744-3000
Facsimile: (214) 744-3015

*Attorneys for Plaintiff*